NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FIONA T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, S.K., *Appellees.*

No. 1 CA-JV 21-0110
FILED 11-9-2021

Appeal from the Superior Court in Maricopa County
No. JD37007
The Honorable Lori Bustamante, Judge

**AFFIRMED**

COUNSEL

Gillespie, Shields, Goldfarb & Taylor, Phoenix
By Mark A. Shields, DeeAn Gillespie Strub
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge D. Steven Williams delivered the decision of the Court, in which Judge David B. Gass and Judge James B. Morse Jr. joined.

---

**W I L L I A M S**, Judge:

**¶1** Fiona T. ("Mother") appeals the juvenile court's order terminating her parental rights to her child, S.K. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2** S.K. was born in 2005. Approximately one year after her birth, Mother's relative filed a private dependency petition alleging S.K. was dependent due to Mother's substance abuse, physical abuse, and neglect. That dependency was later dismissed.

**¶3** In 2007, Mother married Dale T. ("Stepfather") and they had a child together, M.T. Between 2018 and 2019, the Arizona Department of Child Safety ("DCS") received multiple reports that Mother was abusing alcohol, engaging in acts of domestic violence against S.K., and refusing to allow the children to bathe because she was "worried about electricity running through the water."

**¶4** On more than one occasion, Mother caused bruising on S.K. In January 2019, S.K. sustained injuries on the inside of her left arm, which included "two linear bruises that were black in color . . . approximately 1.5 [inches] in length" and a "scratch just above the bruises . . . approximately 1 [inch] in length [which] broke through the skin."

**¶5** DCS filed a dependency petition alleging S.K. and M.T. were dependent because of Mother's substance abuse, domestic violence, neglect, and mental health issues.[1] The parties agreed to an in-home dependency, with time split between Mother and Stepfather who were then living apart. The DCS safety plan required Mother's parents to supervise the children while in Mother's care. The children were later removed from

---

[1] The petition also alleged M.T. was dependent as to Stepfather. However, both Stepfather and M.T. were later dismissed from the dependency and they are not parties to this appeal.

Mother's care after DCS learned Mother's parents allowed Mother unsupervised access to the children.

**¶6**        The juvenile court adjudicated S.K. dependent as to Mother and placed S.K. with Stepfather. DCS later moved to terminate Mother's parental rights, alleging neglect, physical and emotional abuse, and fifteen months in an out-of-home placement.

**¶7**        Mother and Stepfather divorced before the termination trial. In the decree of dissolution, the family court awarded the parties joint legal decision-making authority over M.T. and granted Mother unsupervised parenting time. The divorce proceeding did not involve S.K.

**¶8**        At the termination trial, Mother moved to admit the decree of dissolution, as well as a prior unsigned minute entry in which the family court determined that, while Mother's substance abuse "remains a concern," it was "not sufficient to restrict Mother's parenting time" with M.T. Mother argued both rulings were relevant to the issue of her fitness to parent S.K., and contended the juvenile court was bound by the family court's findings regarding her alcohol use. The juvenile court refused to admit either order into evidence or to consider them in the termination action.

**¶9**        At the termination trial, Mother invoked the rule of exclusion of witnesses, requesting the court exclude Stepfather from the proceeding other than when he was testifying. The court found Stepfather was a party to the proceeding, refused to exclude Stepfather, and allowed him to testify after listening to the testimony of other witnesses.

**¶10**        Following the trial, the juvenile court terminated Mother's parental rights on the grounds of abuse, neglect, and fifteen months in out-of-home placement, and found termination was in S.K.'s best interests.

**¶11**        Mother timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶12**        Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). A court may terminate a parent's right in the care, custody, and management of their children "if it finds clear and convincing evidence of one of the statutory

grounds for severance, and also finds by a preponderance of the evidence that severance is in the best interests of the children." *Id.* at 98, ¶ 7.

¶13 We review a termination order for an abuse of discretion, accepting the court's factual findings unless clearly erroneous, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004), and view the evidence in the light most favorable to sustaining the court's ruling, *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008). Because the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights if reasonable evidence supports the order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).

¶14 Parental rights may be terminated when "the parent has neglected or willfully abused a child." A.R.S. § 8-533(B)(2). "Abuse" includes "serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." *Id.* However, "abuse" is not limited to serious physical or emotional injury, but can also include, for example, inflicting or allowing another to inflict physical injury. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 59, ¶¶ 12-15 (App. 2015) (citing A.R.S. § 8-533(B)(2)) (the word "includes" enlarges the meaning, and evidence of serious physical or emotional injury is not required under the statute); *see also* A.R.S. § 8-201(2) ("'Abuse' means the infliction or allowing of physical injury . . . or the infliction of or allowing another person to cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist . . . .").

¶15 Mother challenges the court's finding of abuse, focusing on only one factual finding—that Mother abused S.K. in January 2019—and attempts to minimize the abuse by characterizing S.K.'s injuries as insignificant. Mother argues that because the incident "resulted in no broken bones or comparable injury," it was not serious enough to warrant termination.

¶16 Contrary to Mother's assertion, abuse need not rise to the level of "serious physical injury." *See E.R.*, 237 Ariz. at 59, ¶ 15. Moreover, as the juvenile court noted, the January 2019 incident was not an isolated incident of abuse. Rather, the court found, and the record shows, Mother had a lengthy history of domestic violence, S.K. reported that Mother's

abuse was ongoing and included both physical and emotional abuse, and S.K. was diagnosed with Post-Traumatic Stress Disorder ("PTSD"). Reasonable evidence supports the court's decision to terminate Mother's parental rights under A.R.S. § 8-533(B)(2).

¶17 Mother contends the court erred in categorizing Stepfather as a "party" to the action and failing to exclude Stepfather from the proceedings until the time of his testimony under Rule 615, Arizona Rules of Evidence. DCS argues the court properly allowed Stepfather to remain under Rules 37(B) and 41(C), Arizona Rules of Procedure for the Juvenile Court, because, as a foster placement, Stepfather was a "participant" to the proceedings and the court had discretion to allow him to stay on the phone (he participated telephonically) even when he was not testifying.

¶18 We need not resolve the issue. Even if the court erred under Rule 615 by failing to exclude Stepfather from the proceedings except for when he testified, Mother was not prejudiced. Stepfather's testimony regarding Mother's abuse of S.K. was cumulative to other evidence the court properly admitted at trial. *See In re Marriage of Molloy*, 181 Ariz. 146, 150 (App. 1994) ("Not all errors in the superior court warrant reversal, however. We will reverse only if the complaining party suffers prejudice as a result of the error. Prejudice must appear affirmatively from the record."); *cf. Fuentes v. Fuentes*, 209 Ariz. 51, 57, ¶ 28 (App. 2004) ("[T]he erroneous admission of evidence that is substantially cumulative may constitute harmless error."). Because there was reasonable evidence of Mother's abuse in the record aside from Stepfather's testimony, Mother has not shown prejudice.

¶19 Mother further argues the court erred by failing to admit the decree of dissolution granting her joint legal decision-making and unsupervised parenting time with M.T., as well as the prior, unsigned minute entry in which the family court determined Mother's substance abuse was "not sufficient to restrict Mother's parenting time" with M.T. On appeal, Mother argues both orders are not only relevant, but are also entitled to preclusive effect as to the issue of Mother's fitness to parent S.K.

¶20 We review the juvenile court's determination as to the admissibility of evidence for an abuse of discretion. *State v. Fillmore*, 187 Ariz. 174, 179 (App. 1996). "In determining the relevancy and admissibility of evidence, the trial judge is invested with considerable discretion," which "will not be disturbed on appeal unless clearly abused." *State v. Hensley*, 142 Ariz. 598, 602 (1984). Mother's fitness to parent M.T. does not necessarily bear on her fitness to parent S.K., nor is it automatically determinative of

her fitness to parent S.K. *See* Ariz. R. Evid. 401. Lastly, we decline Mother's invitation to consider whether the family court orders were preclusive as to the issue of Mother's fitness to parent S.K. because Mother failed to adequately preserve that issue. At trial, Mother argued only that the juvenile court was bound by the family court's unsigned minute entry finding her alcohol use did not pose a detriment to M.T.

**¶21**　　　　Because sufficient evidence exists to support the juvenile court's termination order on the ground of abuse, we need not address Mother's arguments relating to termination of her rights based upon neglect, § 8-533(B)(2), or length of time in an out-of-home placement, § 8-533(B)(8)(c). *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002). Moreover, because Mother does not challenge the court's finding that termination of the parent-child relationship was in S.K.'s best interests, she has abandoned that argument. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to *sua sponte* address issues not raised by the appellant."); *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 14 n.6 (App. 2011) (recognizing the failure to develop an argument on appeal usually results in abandonment and waiver of the issue).

## CONCLUSION

**¶22**　　　　For the foregoing reasons, we affirm the juvenile court's termination order.

